**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| CARBON ACTIVATED TIANJIN CO., LTD. & CARBON ACTIVATED CORPORATION, ) ) ) ) Plaintiffs, ) ) v. ) ) UNITED STATES, ) ) Defendant. ) ) ) | Court No. 24-00265 |

## COMPLAINT

Plaintiffs Carbon Activated Tianjin Co., Ltd. & Carbon Activated Corporation (collectively, "Carbon Activated"), by and through their attorneys, allege and state as follows:

### ADMINISTRATIVE DETERMINATION TO BE REVIEWED

1.     Plaintiffs bring this Complaint to contest the final results of the U.S. Department of Commerce's ("Commerce") sixteenth administrative review of the antidumping duty order on certain activated carbon from the People's Republic of China ("China"), covering the period of April 1, 2022, through March 31, 2023.  *See Certain Activated Carbon From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2022-2023*, 89 Fed. Reg. 92,893 (Dep't Commerce Nov. 25, 2024) ("*Final Results*"), and accompanying Issues and Decision Memorandum ("IDM"); *Certain Activated Carbon From the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review; 2022–2023*, 89 Fed. Reg. 104,978 (Dep't Commerce Dec. 26, 2024) ("*Amended Final Results*").

2.     The *Final Results* were published in the Federal Register on November 25, 2024.  *Certain Activated Carbon From the People's Republic of China: Final Results of*

*Antidumping Duty Administrative Review; 2022-2023*, 89 Fed. Reg. 92,893 (Dep't Commerce Nov. 25, 2024). The *Amended Final Results* were published in the Federal Register on December 26, 2024. *Certain Activated Carbon From the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review; 2022–2023*, 89 Fed. Reg. 104,978 (Dep't Commerce Dec. 26, 2024).

## JURISDICTION

3.    The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), as this action was commenced under sections 516A(a)(2)(A)(i)(I) and (a)(2)(B)(iii) of the Tariff Act of 1930, as amended. 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I), (a)(2)(B)(iii).

## STANDING

4.    Carbon Activated Tianjin Co., Ltd. is a Chinese producer of subject merchandise, and Carbon Activated Corporation is a U.S. importer of subject merchandise. Therefore, they are interested parties within the meaning of 19 U.S.C. § 1516a(f)(3) and 19 U.S.C. § 1677(9)(A). Carbon Activated participated as parties in the U.S. Department of Commerce's sixteenth administrative review of the antidumping duty order on certain activated carbon from the People's Republic of China, and accordingly they have standing to commence this action pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS OF ACTION

5.    Plaintiffs commenced this action by filing a summons on December 26, 2024, on the next business day following 30 days after publication of the *Final Results* in the Federal Register. Plaintiff is filing this Complaint within 30 days after filing the Summons. Accordingly, this action is timely filed pursuant to 19 U.S.C. § 1516a(a)(2)(A) and Rule 3(a)(2) of this Court.

## HISTORY OF THE ADMINISTRATIVE PROCEEDING

1.      On April 4, 2023, Commerce published a notice of opportunity to request administrative review of the antidumping duty order on certain activated carbon from China (the "Order").  *Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Admin. Rev. & Join Annual Inquiry Service List*, 88 Fed. Reg. 19,916 (Dep't Commerce April 4, 2023)*.*

2.      On April 26, 2023, Plaintiffs submitted a timely request to Commerce to conduct an administrative review with respect to Carbon Activated Tianjin Co., Ltd. ("Carbon Activated Tianjin").  Letter from Neville Peterson to Sec'y of Commerce, re: Request for Antidumping Administrative Review (Apr. 26, 2023).  On June 12, 2023, Commerce published a notice initiating an administrative review of the Order for Carbon Activated Tianjin and 19 other companies.  *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 88 Fed. Reg. 38,021 (Dep't Commerce June 12, 2023).  The period of review ("POR") was April 1, 2022, through March 31, 2023.  *See id.*  On July 11, 2023, Carbona Activated Tianjin submitted a separate rate certification.  Letter from Neville Peterson to Sec'y of Commerce, re: Separate Rate Certification for Carbon Activated Tianjin Co., Ltd. in the Sixteenth Administrative Review of the Antidumping Order on Certain Activated (July 11, 2023).

3.      Commerce selected Jilin Bright Future Chemicals Co., Ltd. ("Jilin Bright") and Ningxia Guanghua Cherishmet Activated Carbon Co., Ltd. ("GHC") as the two mandatory respondents.  *See Certain Activated Carbon From the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review; 2022– 2023*, 89 Fed. Reg. 35,797 (Dep't Commerce May 2, 2024) ("*Preliminary Results*"), and accompanying Decision Memorandum

("PDM") at 1.  Jilin Bright and GHC submitted responses to the initial and supplemental questionnaires between August 2023 and March 2024.  *See id.* at 3.

4.     Commerce placed a list of potential surrogate countries for China on the record on November 7, 2023.  *Id.* at 3.  The list included Romania and Malaysia.  Jilin Bright and GHC submitted comments on surrogate country selection and surrogate value information on November 21, 2023.  *Id.* at 3-4.  The respondents argued that Commerce should select Romania as the primary surrogate country because it is a significant producer of comparable merchandise and has superior and more reliable data as compared to Malaysia.  The respondents and petitioners submitted initial surrogate value information on December 20, 2023, and additional surrogate value information in March 2024.  *Id.* at 4.

5.     Commerce issued the *Preliminary Results* on April 26, 2024.  *See* PDM. Commerce preliminarily selected Malaysia as the primary surrogate country and used surrogate value information from Malaysia to value most factors of production ("FOP"), including coal tar and sub-bituminous coal, and used surrogate value information from Turkey for labor.  *Id.* at 9-14.  Commerce preliminarily calculated a dumping margin of $2.01 per kilogram for Jilin Bright and $1.17 per kilogram for GHC.  *Preliminary Results*.

6.     Jilin Bright and GHC filed case briefs contesting, among other issues, Commerce's preliminary selection of Malaysia as the primary surrogate country and selection of surrogate value information for coal tar, sub-bituminous coal, hydrochloric acid, solid sodium hydroxide, and potassium hydroxide.  Petitioners also filed a case brief arguing, among other issues, that Commerce should revise GHC's FOP database to account for activated carbon purchased by its supplier.

7.     Commerce published the *Final Results* in the Federal Register on November 25, 2024.  89 Fed. Reg. 92,893.  In the *Final Results*, Commerce rejected the respondents' arguments that it should select Romania instead of Malaysia as the primary surrogate country.  Commerce found that only Malaysia was a net exporter of activated carbon during the POR, and therefore only Malaysia satisfied the criterion of being a significant producer of comparable merchandise.  IDM at 8.  Commerce rejected the respondents' arguments that Romania is also a significant producer of comparable merchandise.  IDM at 8-11.  Commerce also rejected the respondents' arguments that the Malaysia surrogate values for coal tar, sub-bituminous coal, hydrochloric acid, solid sodium hydroxide, and potassium hydroxide are aberrational.  IDM at 7-20.

8.     Commerce also revised the FOP database for GHC to use a surrogate value for activated carbon to value consumption of certain FOPs.  IDM at 39.  Commerce did so based on findings that GHC failed to establish that its supplier used certain FOPs in the production of subject merchandise that was not self-produced and failed to provide a copy of its supplier agreement.  IDM at 38-39.

9.     On December 26, 2024, Commerce issued the *Amended Final Results*.  89 Fed. Reg. 104,978.  In the *Amended Final Results*, Commerce exercised its discretionary authority to correct a ministerial error in the calculations for GHC – because Commerce had made an inadvertent clerical error in using the wrong surrogate value for bituminous coal – but Commerce did not correct this error in the calculations for Jilin.

10.    This appeal followed.

## STATEMENT OF CLAIMS

### Count One

11.     Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 10.

12.     Commerce's decision to select Malaysia as the primary surrogate country is unsupported by substantial evidence and otherwise not in accordance with law.  Commerce's finding that only Malaysia qualified as a significant producer of comparable merchandise because it was the only net exporter is contrary to law.  Commerce also unlawfully disregarded arguments and evidence showing that Malaysian surrogate values are aberrational, and therefore failed to follow its own policy of taking into account data quality as a critical factor in surrogate country selection.

**Count Two**

13.     Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 10.

14.     Commerce's decision to use the Malaysian surrogate value for coal tar is unsupported by substantial evidence and otherwise not in accordance with law.  Commerce failed to address respondents' arguments and unlawfully disregarded evidence that the Malaysia surrogate value for coal tar is aberrational based on historical data and does not reflect a broad market average because it is based on a low volume of imports.

**Count Three**

15.     Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 10.

16.     Commerce's finding that the Malaysia surrogate value was the best available data to value sub-bituminous coal is unsupported by substantial evidence and otherwise not in accordance with law.  Commerce unlawfully disregarded evidence that the Malaysia surrogate value for sub-bituminous coal is aberrational based on historical data.  Commerce also failed to address arguments that Malaysia import prices for sub-bituminous coal fluctuated aberrationally during the POR.

**Count Four**

17.    Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 10.

18.    Commerce's decision to use the Malaysian surrogate value for hydrochloric acid is unsupported by substantial evidence and otherwise not in accordance with law.  Commerce unlawfully disregarded evidence that the Malaysia surrogate value for hydrochloric acid is aberrational based on historical data and does not reflect a broad market average because it is based on a low volume of imports.

**Count Five**

19.    Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 10.

20.    Commerce's decision to use the Malaysian surrogate value for solid sodium hydroxide is unsupported by substantial evidence and otherwise not in accordance with law. Commerce unlawfully disregarded evidence that the Malaysia surrogate value for solid sodium hydroxide is aberrational based on historical data and does not reflect a broad market average because it is based on a low volume of imports.

**Count Six**

21.    Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 10.

22.    Commerce's decision to use the Malaysian surrogate value for potassium hydroxide is unsupported by substantial evidence and otherwise not in accordance with law. Commerce unlawfully disregarded evidence that the Malaysia surrogate value for potassium hydroxide is aberrational based on historical data and does not reflect a broad market average because it is based on a low volume of imports.

**Count Seven**

23.    Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 10.

24.     Commerce's decision to revise the FOP database for GHC to use a surrogate value for activated carbon to value certain FOPs is unsupported by substantial evidence and otherwise not in accordance with law.  Commerce unlawfully disregarded evidence that GHC's unaffiliated supplier only used coal to produce the activated carbon sold to GHC, not the purchased activated materials.

**Count Eight**

25.     Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 10.

26.     Commerce's decision to exercise its discretionary authority to correct an inadvertent clerical error with respect to the Malaysia surrogate value for bituminous coal in the calculations for GHC but not for Jilin is unsupported by substantial evidence and otherwise not in accordance with law.

## REQUEST FOR JUDGMENT AND RELIEF

**WHEREFORE**, for the foregoing reasons, Plaintiffs respectfully request that the Court:

1)      Hold that certain aspects of Commerce's *Final Results* and *Amended Final Results* are not supported by substantial evidence and otherwise not in accordance with law;

2)      Remand to Commerce for disposition in accordance with the Court's final opinion; and

3)      Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Stephanie E. Hartmann
David J. Ross
Jeffrey I. Kessler
Stephanie E. Hartmann

WILMER CUTLER PICKERING
  HALE and DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6564
stephanie.hartmann@wilmerhale.com

Date:  January 27, 2025